RAYMOND N. DILLINGHAM, Appellant,

*v.*

TRI-STATE INSURANCE CO., INC., and MIDWESTERN
INSURANCE CO., INC., Appellees.

381 S.W.2d 914.

(*Jackson*, April Term, 1964.)

Opinion filed May 8, 1964.

Petition for Rehearing Denied July 15, 1964.

Nell Sanders Aspero, Memphis, Aspero & Aspero, Memphis, of counsel, for appellant.

Edward W. Kuhn, Henry T. V. Miller, Memphis, McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, of counsel, for appellees.

Mr. Justice Holmes delivered the opinion of the Court.

The parties will be referred to according to their status in the Trial Court. The complainant, Raymond N. Dillingham, filed his original bill in this cause on May 15, 1963, naming as defendant Tri-State Insurance Group. This bill alleges that complainant had recovered a judgment in the Circuit Court of Shelby County against one Cyrus Huffman, Jr., in the amount of $7,500.00 for personal injuries and $250.00 for property damages, that

Huffman's liability was insured by the named defendant under a policy with a $5,000.00 limit of liability for bodily injury to one person and a limit of $5,000.00 for property damage. The bill further alleged that the insurer had paid into the registry of the Circuit Court $5,250.00 on this judgment and that execution for the balance of $2,500.00 of the judgment had been issued and returned "nulla bona". It is also alleged in the original bill that complainant, prior to the trial in the Circuit Court, had offered to settle the Circuit Court case for a total of $3,000.00, which was $2,000.00 less than the policy limit, which settlement the insurer had refused to make. The bill charged the insurer with bad faith and negligence in refusing to settle within the policy limits, and prayed for a recovery against the insurer for the excess of the judgment held by complainant over and above the limit of the policy.

On May 29, 1963 the complainant filed an amended bill in this cause, naming as defendants Tri-State Insurance Co., and Midwestern Insurance Co., Inc. These defendants first filed their answer to the original and amended bill, which they were later allowed to withdraw, and then filed a demurrer to these bills upon the ground, among others, that the bill showed on its face that the defendants did not owe any duty of care to complainant and did not breach any duty owed to him. The Chancellor sustained this demurrer and then, upon application of complainant, granted complainant leave to amend the original and amended bills so as to set up an assignment to the complainant from the named insured Cyrus Huffman, Jr., of his cause of action against the defendant insurance companies. The Chancellor granted complainant leave to file this amendment. The amend-

ment to the amended bill setting forth the alleged assignment was filed on October 16, 1963. Thereafter the defendants filed a further demurrer setting forth as one of the grounds thereof that the cause of action sued on was not assignable and that the action could not be maintained by the complainant as assignee of the insured. By stipulation of the parties, the policy issued by the defendants to Huffman was made a part of the record. The Chancellor sustained this further demurrer of the defendants and dismissed the original bill and amended bill as amended. The complainant then sought leave to again amend so as to add the insured Cyrus Huffman, Jr., as a party complainant in the cause. This last application to amend was denied by the Chancellor and the bill was dismissed. From this action the complainant has duly prosecuted his appeal to this Court and assigned errors.

■ By Assignment of Error Number One, the complainant insists that a judgment creditor alleging bad faith and negligence on the part of the insurer in refusing to settle within the policy limits may maintain an action against the insurer for the excess judgment over and above the policy limit. In support of this contention, complainant in the brief and oral argument in this Court relies upon *Auto Mutual Indemnity Co. v. Shaw,* 134 Fla. 815, 184 So. 852. In the Shaw case the Supreme Court of Florida did hold that, under terms of the policy issued by the insurer in that case, the judgment creditor, after the return of an execution against the insured unsatisfied, could maintain an action against the insurer for the excess. The policy in that case provided:

"the judgment creditor shall have a right of action against the Company to recover the amount of said judgment *to the same extent that Assured would have had if he had paid the judgment.*" (Emphasis supplied.)

The provision of the policy issued by the defendants in this case is as follows:

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter *be entitled to recover under this policy to the extent of the insurance afforded by this policy.*" (Emphasis supplied.)

The Florida Courts have held that a policy containing the same provision contained in the policy issued by the defendants in the case now before the Court gives no right of action to the judgment creditor against the insurance company for any excess of the judgment over and above the policy limit.

In *Canal Ins. Co. etc. v. Sturgis* (Fla. App.), 114 So.2d 469, the District Court of Appeal of Florida, at page 471 of 114 So.2d stated:

"In our opinion, the 'insurance afforded by this policy' should be construed to mean the insurance provided

by the policy up to the policy limits. As we view it, the amount in excess of the policy limits which an insured might in a proper case be able to recover against the insurer because of its negligence or bad faith in failing to compromise or settle a claim, is not truly of the character of 'insurance', but rather constitutes damages resulting from the insurer's tort or breach of contract.''

This opinion of the Florida District Court of Appeal was in all things affirmed by the Supreme Court of Florida in *Sturgis v. Canal Insurance Co. etc.* (Fla.), 122 So.2d 313. The Supreme Court of Florida stated:

''we have reached the conclusion that the District Court was correct in its decision that a judgment creditor may not maintain a suit directly against the insurer for recovery of the judgment in excess of the insurance policy limits under the circumstances of this case and the language of the insurance policy issued by the respondent.''

In an article by Professor Robert E. Keeton appearing in 67 Harvard Law Review, 1136 et seq., (May 1954) in discussing the liability of insurance companies for judgments in excess of policy limits, at page 1175, it is stated:

''Has claimant a cause of action in his own right? Some policies have contained a provision that claimant, after writ of execution against insured is returned unsatisfied, may recover against company *to the same extent as could insured if he had paid the judgment;* such provision has been construed as applying to the recovery to which insured would have been entitled under the doctrine of excess liability (citing the Shaw

case and a federal case). Typical policies now in use do not contain this provision; in the absence of such a policy provision, the courts have declined, as to the cause of action in excess of policy limits, to permit direct recovery by claimant against company. The excess liability of company arises out of the relationship between insured and company. Claimant is a stranger to that relationship. Not only is company without any duty to claimant to accept claimant's reasonable settlement offer, but also, if there is a sizeable disparity between the settlement offer and the amount of the judgment obtained in the trial which follows refusal of the offer, claimant is benefited rather than harmed by company's refusal to settle. It would therefore be anomalous to permit claimant to recover directly against company in his own right (in the absence of policy provision, such as the italicised phrase above, clearly having that meaning.)''

In Tennessee, actions to recover the excess over the policy limits have been expressly held to be actions *ex delicto*. In the recent case of *Carne v. Maryland Casualty Co.*, 208 Tenn. 403, 346 S.W.2d 259, this Court, speaking through Mr. Justice Burnett, now Mr. Chief Justice Burnett, stated:

''* * * Of course, such a suit, and the basis for liability thereon, arises out of a contract but they are *ex delicto* nevertheless. This being true, we are confronted with the proposition that this is the kind of lawsuit which is based upon bad faith. That is the gist of the present controversy where 'the issue is one sounding in tort.' '' 208 Tenn. 406, 346 S.W.2d 261.

The defendants in the case before the Court owed no duty of care to the complainant. It cannot be said that the complainant suffered any injury because of the alleged bad faith on the part of the insurer in refusing to settle. Had the complainant's offer of settlement been accepted, the complainant would have recovered $3,000.00. Since the insurer refused to accept that offer of settlement, the complainant has collected $5,250.00. Certainly it would be anomalous to allow the judgment creditor in such a situation to recover damages for the insurer's failure to settle the case for much less than the judgment creditor has already collected.

Among the cases holding that a suit for the excess may not be maintained by the judgment creditor are *Murray v. Mossman*, 56 Wash.2d 909, 355 P.2d 985 (holding the action sounds in tort); *Francis v. Newton et al.*, 75 Ga.App. 341, 43 S.E.2d 282; *Paul v. Kirkendall*, 6 Utah 2d 256, 311 P.2d 376; *Duncan v. Lumberman's Mutual Casualty Co.*, 91 N.H. 349, 23 A.2d 325, in which the Court, at 326 of 23 A.2d stated:

"In short, conduct to be legally wrongful must contravene some duty which the law attaches to the relation between the parties (citing cases) and it is clear that no relationship here exists between Mary K. Yeroyan (the judgment creditor) and the defendant company which would permit the maintenance of the present action."

See also *Wessing v. American Indemnity Co.* (D.C.Mo.), 127 F. Supp. 775, and *Chittick v. State Farm Mutual Automobile Ins. Co.* (D.C.Del.), 170 F.Supp. 276.

The first assignment of error is overruled.

By Assignment of Error Number Two, it is insisted that the Chancellor committed error in holding that the cause of action "which forms the basis of this suit, cannot be assigned by the judgment-debtor-insured to the judgment-creditor".

This precise contention was raised and found to be without merit in *Carne v. Maryland Casualty Co.,* supra. In the Carne case, Dr. Carne, who was the insured under a policy of liability insurance issued by the Maryland Casualty Co., had a judgment rendered against him in excess of the limits of his policy. He died before instituting any suit to collect from his insurance company the excess of the judgment over the policy limits. His administratrix brought an action against the insurer for this excess, alleging negligence and bad faith upon the part of the insurer. This Court held that the insured's cause of action against his insurer in such case "is really based on fraud or bad faith." It was held that this cause of action died with the person of the insured and did not survive for the benefit of his estate. In so holding, the Court, at 408 of 208 Tenn. at 262 of 346 S.W.2d stated:

"It is very forcibly and ably argued in behalf of the plaintiff in error that the cause of action herein was assignable, and thus if it was assignable it survived and suit can now be maintained on it by the representative of the deceased. The test of assignability of a right of action *ex delicto* as we have heretofore determined this is, is made to depend upon whether or not it is survivable. *Haymes v. Halliday,* 151 Tenn. 115, 268 S.W. 130. Under the statutes heretofore referred to we cannot conclude this type of action is survivable. We have been cited no other statute

wherein such an action is made survivable. The action here brought is really based on fraud or bad faith. * * *

\* \* \* \* \* \*

"We have been very much interested in our study of the able briefs herein as well as our independent investigation of the matter, and we are satisfied that the action upon which this suit is based cannot be assigned, and for the reasons herein stated the judgment of the lower court must be affirmed."

*Haymes v. Halliday,* 151 Tenn. 115, 268 S.W. 130, makes it abundantly clear that "The test of the assignability of a right of action *ex delicto* is made to depend by the overwhelming weight of authority on its survivability." 118 of 151 Tenn., 130 of 268 S.W. The cause of action sued on in *Haymes v. Halliday,* supra, was held to be one for injuries to real property which survives pursuant to the provision of Chapter 111 of the Acts of 1877 (now T.C.A. sec. 23-2904). It is to be noted in the light of some of the authorities mentioned in complainant's brief that in *Haymes v. Halliday,* supra, it is the survivability of the *right of action* that determines the assignability of the cause of action. The fact than an *action* brought may be revived under T.C.A. sec. 20-602 does not make the *cause of action* survive.

The opinion in the Carne case shows that the Court fully considered the rules stated in *Haymes v. Halliday,* supra, and *Adcock v. New Crystal Ice Co.,* 144 Tenn. 511, 234 S.W. 336, in arriving at the conclusion reached by the Court. In 67 Harvard Law Review, from which we have heretofore quoted, the author, with reference to the assignment of such causes of action, states at pages 1176 and 1177:

"* * * Should he be allowed to accomplish the same result indirectly by taking an assignment from insured?

"A doctrine or statute permitting claimant to recover the excess from company, either in his own right or as assignee of insured, is only slightly beneficial to insured—the one who is the victim of company's wrong. Insured is protected by the cause of action for reimbursement. This additional remedy would benefit insured only by making possible at claimant's option a transfer from insured to claimant of the cost of enforcing the claim of excess liability—such expenses and attorney's fees as are not included in the measure of recovery. The person greatly benefited by such doctrine is claimant—a person not harmed by company's refusal to settle. A judicial extension (either by tort or by implied contract theory) of the liability of company beyond that undertaken by the agreement cannot be justified by a purpose of benefiting a third party who is not harmed by anything company has done or failed to do."

In complainant's brief, several California cases are cited as authority for the assignability of the cause of action here sued upon. In *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883, the Court held that such a cause of action was assignable under Section 954 of the California Civil Code. In that case, the California Court further held that the period of limitation prescribed for actions on contracts applied to the cause of action.

As stated, the rule in Tennessee as to the assignability of the cause of action here sued on is controlled by the

decision in the Carne case, which clearly states the Tennessee rule.

The second assignment of error is overruled.

■ Complainant's third assignment of error is as follows:

"The Court erred in denying complainant's application to amend his Original Bill, as amended, so as to make the named insured, Huffman, a party complainant (R. 33).

"This was error because the Court had previously held that Dillingham had no cause of action against the defendants-insurers; it had ruled, further, that Dillingham could not even maintain an action against said defendants under an assignment from the insured, Huffman, and that the bill should be dismissed."

This assignment recognizes, as is reflected by the record, that the application to amend and bring the action in the name of the insured was made after the Chancellor had sustained the demurrer to the amended bill as amended and had ruled that the bill should be dismissed.

In *Crowder v. Turney*, 43 Tenn. 551, the Chancellor sustained a demurrer to a bill. Thereafter, on the same day, the complainant moved the Court for leave to amend his bill and presented his amended bill. The Chancellor denied the application to amend. In affirming the action of the Chancellor, this Court stated, at 552 of 43 Tenn.:

"The record shows leave was not asked to amend the original bill until after the decree of the Court had been pronounced sustaining the defendant's demurrer thereto; and, therefore, the application was

too late. The demurrer was to the whole bill; it had been allowed, and the bill dismissed.''

That case was decided in 1866.

In the very recent case of *Daniels v. Talent,* 212 Tenn. 447, 370 S.W.2d 515, this Court cited that case with approval and held that Trial Judges have a broad discretion in allowing or denying applications to amend. The action of the Trial Judge in such case will not be reversed unless that discretion is abused.

In the case before the Court, there was no abuse of discretion on the part of the Chancellor. When the last application to amend was made, the Chancellor had ruled upon the demurrer and ordered the amended bill as amended dismissed.

The third assignment of error is overruled.

By the fourth assignment of error, complainant urges that the action of the Chancellor in not permitting complainant to prosecute the action as assignee of the insured was in violation of the Fourteenth Amendment to the United States Constitution in that it deprived complainant of personal property without due process of law and that this action also violated Article 1, Section 8 of the Constitution of Tennessee in that it deprived complainant of his property without the judgment of his peers. By this assignment, complainant also contends that this action of the Court denied him his right to a trial by jury, as guaranteed under Article 1, Section 6 of the Constitution of Tennessee, and deprived him of his right to a remedy by due course of law, as guaranteed to him by Article 1, Section 17 of the Constitution of Tennessee.

The complainant was denied none of his constitutional rights in this case for the reasons hereinabove set forth. His original and amended bill did not state a cause of action against the defendant. The Chancellor allowed complainant to amend and bring the suit as assignee of the named insured when the first demurrer was sustained. For the reasons above stated, the Chancellor was eminently correct in holding that the cause of action sued. on was not assignable and could not be maintained by the complainant as assignee.

It results that all of the assignments of error are overruled and the decree of the Chancery Court is affirmed at complainant's cost.

### On Petition to Rehear

Counsel for the appellant have filed a vigorous petition to rehear, in which it is sought to distinguish the present case from *Carne v. Maryland Casualty Co.*, 208 Tenn. 403, 346 S.W.2d 259, insofar as the assignability of the cause of action is concerned. In the petition to rehear, it is stated:

"The facts in the case of Dr. Carne, Admx., are completely distinguishable from those in the case *at bar*. There, the right of action did not survive because suit on it was *not commenced* before Dr. Carne's death."

This petition further states:

"However, the question of what happens *after* death of a party is of no concern in the case *at bar,* because the parties are still *living*. Therefore, since the suit *at bar* was *commenced* (before death) while the parties are still *alive* (that is, before death) it is a survivable

cause of action under T.C.A. 20-602 and the 'interest' in the cause may be *transferred* (or assigned) under T.C.A. 20-601.''

As pointed out in our original opinion, the assignability of a chose in action depends on whether or not it would survive and pass to the personal representative of a decedent. If it would so survive, it may be assigned. If it would not survive, it is not assignable. This is the rule stated in *Haymes v. Halliday,* 151 Tenn. 115, 268 S.W. 130. The fact that complainant attempted to take an assignment from the named insured and to bring an action as assignee while all of the parties are living does not make the cause of action assignable. The assignability of a chose in action depends not upon whether or not an action brought thereon may be revived, but upon whether or not the cause of action would survive death.

In the Carne case, this Court unequivocally held that a cause of action of the same character as that sued on in the present case is not assignable under the law of Tennessee.

It is next contended in the petition to rehear that, in deciding this case, we overlooked the case of *Horton v. Employers' Liability Assurance Corp.,* 25 Tenn.App. 593, 164 S.W.2d 1011, in which certiorari was denied by this Court by opinion reported in 179 Tenn. 220, 164 S.W.2d 1016.

We did not overlook this case. It is simply not applicable. The Horton case was an action brought by a judgment creditor of the insured against the insurance company to collect a $5,000.00 judgment which had been

rendered by default against the named insured, who had breached the provision of the policy requiring the assistance and cooperation of the insured. It was not an action *ex delicto* to collect any part of a judgment in excess of the policy limit, but was an action *ex contractu* by the judgment creditor as a third party beneficiary under the terms of the policy. The Court held that the named insured had breached the policy provision requiring assistance and cooperation on his part, that this provision was made a condition precedent to liability under the terms of the policy, and that the rights of the third party beneficiary could not rise higher than the rights of the named insured. In holding the judgment creditor could not recover, this Court, at 225 of 179 Tenn., at 1018 of 164 S.W.2d, stated:

"The complainant here sues upon the policy and may not be heard to repudiate any of the provisions thereof."

Other contentions made in the petition to rehear were fully considered by us in the preparation of our original opinion and were found to be without merit. The petition to rehear is denied.